REGINA MUSIC–BOX CO. v. OTTO et al. (three cases).

(Circuit Court, D. New Jersey. January 14, 1901.)

PATENTS—INFRINGEMENT—MUSIC BOXES.

The Riessner patent, No. 569,233, the Brachhausen patent, No. 569,393, and the Brachhausen patent, No. 621,025, each for improvements in automatic musical instruments, *held* valid, and infringed.

In Equity. Suits for infringement of patents. On final hearing.

Antonio Knauth, for complainant.

GRAY, Circuit Judge. Three several suits in equity were brought by complainant against the defendants for infringement of three several patents numbered 569,233, 569,393, and 621,025. Bills of complaint were filed in these suits in January, 1900, with the usual prayers for injunction and accounting for damages in costs against defendants, and the hearing was had of the three suits together, on bills, answers, proofs, and exhibits. The usual prima facie proofs of infringement and expert testimony were made in each case by the complainants, but, though the answers in each case denied all the material allegations in the bills, and set forth various defenses, no proofs were adduced by the defendants, nor was any argument made in behalf of the defendants, at the hearing in any of them. Shortly stated, the invention of the patent No. 569,233, in suit No. 1, consists in a music box in which a number of note disks are stored in a receptacle from which they can be automatically taken, placed in operative position to play a tune, to be thereafter automatically put into their respective places in the receptacle again. The expert witness for complainant, after explaining the mechanism of the music boxes now commonly sold on the market, and alluding to the disadvantages resulting from the placing and displacing of the note sheets by hand therein, says:

"It appears, and I so understand, that this patentee was the first to provide a music box of the note disk or star wheel class with a receptacle for holding or storing a series of note disks, and with mechanism for automatically conveying any disk therefrom to the instrument, placing it in operative position

therein, and subsequently conveying it back therefrom, and redepositing it in said receptacle. I also understand that Riessner was the first to provide means for selecting at will any one of a series of note disks or sheets in a receptacle, irrespective of its consecutive order in the series, and automatically conveying it into operative position to play the instrument. I also understand that he was the first to provide automatic means for reconveying such disk or sheet back to its own place in the receptacle, so that it may be subsequently again selected, or may be played over and over again, if desired, independently of the other disks of the series. I also understand that Riessner was the first to provide means for automatically handling and applying note disks in operative position in a mechanical musical instrument. The mechanical problem presented was a difficult one."

The claims of the letters patent No. 569,233 are 12 in number. A careful consideration of them in the light of the expert testimony produced by complainant, and in the absence of any attempt to controvert that testimony on the part of the defendants, justifies the court in adopting the conclusions reached by the complainant's expert in the language used by him, as follows:

"Having now completed my comparison of the claims in the patent with 'defendants' instrument,' I will now, by way of summing up, and as reinforcing or corroborating my conclusion that defendant's instrument contains the essential invention of the patent in suit, and the substantial combinations of elements specified in each of the claims thereof, state that in this instrument precisely the same cycle of operations is performed in precisely the same succession as in the operation of the mechanism set forth in the patent in suit; this cycle of operations being as follows, assuming that in each case only a single disk is to be played, and that the tune is not to be repeated: (1) As a preliminary to the actual operation, the operator may initially select any disk to be played, which in each case he does by moving a handle upon the exterior of the case until the elements of an indicating device upon the exterior of the instrument show that the desired disk has been brought to the lifting position, the movement of the handle resulting in displacing the disk receptacle towards the front or rear until this desired disk reaches this position. (2) Then, upon the operator starting the instrument, the first operation in each case is that the plunger performs its ascending movement, thereby lifting the disk to the position shown in dotted lines in Fig. 1 of the patent and by the dotted circle in my Fig. 9, then stopping and holding this disk for a moment in this position. (3) Then the disk holder moves backwardly against the disk, pushing the latter slightly towards the rear, so that it is centered upon the pivot pin, and so that its note teeth are brought into engagement with the star wheels, and so that its marginal perforations are brought into engagement with the teeth of the driving wheel. (4) At the same instant the plunger descends a short distance, sufficiently to leave the disk free to turn. (5) Thereupon the disk is slowly revolved by the driving wheel in order to play its tune, being meanwhile securely held in its operative position by the disk holder. (6) At the end of the tune, or when the disk has completed one revolution, the plunger slightly rises again in order to re-engage the margin of the disk and support it, and (7) at the same instant the disk holder moves forward, and thereby releases the disk, which remains for an instant supported again upon the elevated plunger. (8) Thereupon the plunger executes its descending movement, thereby lowering the disk back into the receptacle, redepositing it therein in the same compartment from which it previously took it. At the end of this cycle of operations the instrument of the patent stops. The defendant's instrument, however, adds one movement, which is supplemental to the cycle provided for in the patent; that is to say, it executes a feed movement for the receptacle, displacing it the distance from one disk to the next, in order that the next time the instrument is played it will play the next disk in the series, unless meanwhile the person operating it shall, by using the selecting mechanism, select some other disk. This last movement, however, does not affect the preceding cycle of movements, and is

a feature in defendant's instrument that is supplemental or extraneous to that which is provided in the patent."

We therefore conclude that complainant's patent, No. 569,233, is valid, and that it has been infringed by the defendants. Let a decree, therefore, be drawn in suit No. 1 in accordance with the prayer of the bill.

In suit No. 2 the bill of complaint charged the defendants with jointly and severally infringing upon the United States letters patent No. 596,393, granted to Gustav A. Brachhausen on December 28, 1897, for improvements in automatic musical instruments, which letters patent were assigned by the inventor to the complainant on July 19, 1898, by an assignment in writing. The patent in suit is for a complicated mechanism, and contains a large number of claims, and the claims which complainant maintains to be infringed by defendants' instrument are claims 1, 2, 3, 4, 5, 13, 14, 15, 16, 17, 19, 20, 22, 23, 24, 25, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 55, 56, 57, 58, 59, and 60. In order to understand the general nature of the improvements covered by this patent, we must recall the fact that by the Riessner patent, discussed in case No. 1, an instrument of the same general class was shown, in which a note disk was automatically fed from a receptacle to the playing mechanism, was then rotated, playing a tune, and thereupon released and automatically fed back to its place in the carriage. In order to change the tune, Riessner was compelled to resort to hand-operated means by which the position of the disk carriage was shifted to and fro. In the present patent the inventor, Gustav A. Brachhausen, has constructed and shown mechanism by which the movement of the carriage itself is automatically accomplished; as, for instance, by the insertion of a coin in the instrument, which sets the mechanism going. This in turn enabled the patentee to play consecutively, and without intervention of the person operating the instrument, all the tunes contained in the instrument. This mechanism, by which the disk carriage is automatically shifted in the instrument, covers, however, but one branch of this complicated instrument. He next constructed a locking device, by which the carriage is prevented from being moved while the note disk is raised, rotated, and lowered. Another important part of the invention of the letters patent in suit consists in the construction of a driving mechanism, consisting of two spring motors, operatively connected with each other in a highly ingenious manner in such way that one of the spring motors has the sole task of furnishing the necessary power to the shifting of the carriage into its proper position under the playing mechanism, the elevation of a note disk out of the carriage, its placing into operative position where it can play its tune, and its subsequent return to the carriage, followed by a motion of the carriage itself; while it is the function of the other drum to furnish the necessary power for rotating the sheet and thereby playing a tune. The last-mentioned drum is the same in all instruments of this character, and is, therefore, usually called the main drum, while the first-mentioned spring drum has been called an auxiliary drum. They are so connected that when one drum is in motion, thereby setting its particular adjuncts

in operation, the other drum is kept locked, so that the action of the two drums in the instrument is an alternating one. By means of the employment of two separate drums to furnish power and motion to the instrument, the patentee was enabled to practically double the power, and consequently the size and capacity, of instruments of this character. There is a certain limitation to spring drums which can be utilized in instruments of this kind, and can be conveniently wound up by a hand lever, and by dividing the labor between two drums of the same character the patentee could put twice as much driving power into the instrument as before. This again does not exhaust the scope of the invention, for the patentee also took care to construct his instrument in such a manner that, while it is capable of operating automatically through the whole cycle of operations, it also allows a control of the motions of the disk carriage by hand for the purpose of selecting any tunes to be played out of their prearranged order. The instrument can, therefore, either be operated entirely as an automatic instrument, or partly as an automatic instrument and partly by hand. This same mechanism which is employed to shift the carriage by hand likewise constitutes an index mechanism to indicate the tune being played, whether the carriage is automatically or hand operated.

With these general explanations we refer to and adopt the conclusions of complainant's expert, as follows:

"In both defendants' instrument and the patent in suit every part of the instrument is automatically operated, so that a movement of the starting lever by hand, or by the insertion of a coin, will produce automatically a cycle of movements which results in the proper note disk being fed automatically to a position where it can be automatically conveyed to operative position in the instrument, and the note disk will be automatically conveyed to operative position, where it will receive a separate and distinct movement, which results in playing the instrument and in clamping the note disk in operative position during this playing movement, in automatically unclamping the note disk, and again depositing it in its proper position in the carriage, and automatically unlocking the carriage which had previously been automatically locked and maintained locked during the playing operation and the feed of the carriage. It will likewise be observed that these various parts receive their movements in essentially the same manner in both defendants' instrument and in the patent in suit, and that the timing and operation of the parts are brought about in the same manner, and by essentially the same means, in both cases."

There is no evidence in this case connecting the defendant Gustav Otto with the infringement of the corporation, and a decree against him is, therefore, not prayed for, but, as to the principal defendant, F. G. Otto & Sons, the complainant is entitled to a decree for perpetual injunction, and an account of damages and profits and costs upon all the claims specified. Let a decree be drawn as prayed for.

In suit No. 3 the letters patent No. 621,025, in suit, are for certain improvements in music boxes of the same nature as those explained in suits Nos. 1 and 2; and, in order to shortly characterize the peculiar features of invention contained in the present patent, it will be useful to contrast it with the last preceding patent,—that of G. A. Brachhausen,—which formed the basis of the suit No. 2. In the patent of suit No. 2 the inventor had shown an instrument in which 12 or more note disks could be operated automatically and successively

to play their several tunes; but, when this had been accomplished, or whenever the operator wished to play again one or any of the preceding tunes, he had to open the instrument, and reset the carriage containing the note disks into operative position again.

First. The present patent has for its first and most important feature mechanism by which a continuous and reciprocating motion of the carriage is obtained, thus making it unnecessary to open the instrument at any time, and making it truly continuously operating. This continuous movement is produced by the construction of a gear which operates continuously in the same direction, but which, by the employment of an ingenious device, produces, whenever desired, a reciprocating motion of the carriage. The specific character of this gear is claimed, as also the general character of the mechanism for using such reciprocating motion.

Second. The second feature of invention to which the court's attention has been called lies in the construction of several guide shields and guide bars, by which any improper contact between the note disk and the playing mechanism—that is, the star wheels and combs —is prevented. Several such devices are described and claimed.

Third. The third feature of invention consists in a device allowing the repetition of any given tune without moving the tune disk away from its operative playing position. In the patent in suit No. 2 a certain repetition of the playing of tunes was possible, but only by letting the disk resume its position in the carriage, and again conveying it to operative position for the purpose of playing the same tune the next time. The waste of time and power incidental to such removal from the operative position is avoided by this new improvement.

Fourth. The last feature of improvement consists in mechanical means whereby the proper registration of the gear and connecting parts is attained in the instrument, although the operator may fail to properly locate the movable element of the indicating mechanism opposite the fixed point. The desirability of such mechanism will be readily perceived when it is considered that the instrument contains two powerful springs, which, when acting upon an improperly set gear, may be apt to break valuable parts of the machine.

No attempt has been made to justify or excuse the taking of complainant's invention, and a decree is therefore prayed for against the defendant corporation, F. G. Otto & Sons, for injunction, damages, profits, and costs on all the claims specified on page 74 of the record, namely, claims 1, 3, 4, 5, 6, 9, 10, 11, 12, 13, 14, 15, 16, 17, 19, 20, 22, 24, 25, 26, 27, 28, 29, 30, 33, 35, 37, 38, 52, 53, 54, 57, 59, 60, 61, 62, 63, 64, 65, 66, and 67. No testimony was taken in this suit connecting the defendant Gustav Otto individually with the infringement, for which reason decree against him is not prayed for. Let a decree be drawn as prayed for.